**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

REBECCA DIANE THEIS                                                                                         PLAINTIFF

v.                                                      No. 3:10CV00193 JLH

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                                                          DEFENDANT

**OPINION AND ORDER**

On May 8, 2008, Rebecca Theis applied for supplemental security income pursuant to Title XVI of the Social Security Act. She alleged that she has been disabled and unable to work since February of 2006 because of "seizures, severe headaches, heart [problems], epilepsy, knee [pain], kidney failure, and type 2 diabetes." Her application was denied initially on June 19, 2008, and upon reconsideration on August 12, 2008. Theis then requested a hearing at which she appeared and testified on November 12, 2009, in Forrest City, Arkansas. The Administrative Law Judge concluded that Theis was not disabled, and on July 29, 2010, the Appeals Council denied her request to review the ALJ's decision—rendering it final. Subsequently, Theis commenced this action pursuant to 42 U.S.C. § 405(g) (2006) seeking judicial review of the ALJ's determination. Review by the Court is limited. The Court must determine whether the ALJ's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); 42 U.S.C. § 405(g).

**I. DISABILITY CLAIM EVALUATION PROCESS**

The Social Security Administration has promulgated a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 (2010); 20 C.F.R. § 416.920 (2010). The first step is to determine whether the claimant is engaged in substantial gainful activity.

If so, benefits are denied. The second step is to determine, based solely on the medical evidence, whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. If not, benefits are denied. The third step is to determine, again based solely on the medical evidence, whether the severe impairments meet or equal a listed impairment which is presumed to be disabling. If so, and the duration requirement is met, benefits are awarded. If claimant does not meet or equal a Listing, then a residual functional capacity assessment is made based on all the relevant evidence. The fourth step is to determine whether the claimant has sufficient residual functional capacity, despite the impairments, to perform the physical and mental demands of past relevant work. If so, benefits are denied. The fifth step is to determine whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. If so, benefits are denied; if not, benefits are awarded. *Id.*

## II. THEIS' WORK HISTORY

Theis testified that she was born in 1967 and completed the eighth grade. She stated that she obtained a certified nursing assistance license. A disability report completed on May 20, 2008 indicates that Theis worked from 1983 to 2006 at a Kentucky Fried Chicken in various capacities.[1] Theis states that the restaurant paid her $6.20 per hour and that she worked about five hours per day for five days per week. In the report, Theis said she served as a manager, cook, and cashier, and she opened and closed the store. She said her most recent duties included acting as a cashier at the front counter and performing preparation work. According to Theis, this job required four hours of sitting

---

[1] In her testimony, Theis explained that she worked only "off and on" at the restaurant during this period.

and another four hours of standing each day. She stated that she had to write and reach a great deal, and also to sit, climb, stoop, kneel, crouch, and handle large objects each day. Theis said her work required the use of machines, tools, or equipment as well as technical knowledge or skills. She asserted that she lifted up to twenty pounds at the most, and up to ten pounds frequently. Theis testified that she served as a "manager" but was not a lead worker. She testified that she hired and fired employees. According to the disability report, Theis also worked as a cook for approximately eight or nine months at a "fast food and nursing home" type of business. She stated that her hourly wage was $6.50 per hour and that she worked for six hours per day for five days per week.

  According to her work history report, between 2003 and 2007, Theis worked at a Hardee's restaurant for about seven months, painted railroad cars for approximately five months, and worked at two factories for a combined period of three months. At the restaurant, Theis said she prepared biscuits and washed dishes; had to walk or stand eight hours per day, as well as climb, kneel, crouch, crawl, handle large objects, reach, and write or handle small objects; and used machines, tools, or equipment, but did not perform writing duties or use technical knowledge or skill. She said that she carried boxes of milk "all day long," regularly lifting twenty-five pounds and occasionally up to fifty pounds. She stated that her hourly wage was $6.50 and that she worked for five days per week. As a railroad car painter, Theis said her employer paid her $8.25 per hour. According to Theis, the physical demands of the position were similar to her job at the Hardee's restaurant except that more kneeling, reaching, and crawling was required and she did not lift more than twenty to twenty-five pounds. Theis said her work at the factories as a packer brought her $8.50 per hour. Her lifting limits were similar to her job as a painter, but she spent eight hours per day handling large and small objects as well as reaching. She also said that being a packer required technical knowledge or skills.

Theis said she was not a lead employee in any of these positions and did not hire or fire other employees.

At the hearing, Theis testified that she also "hung drywall." She testified that she has not worked since filing her disability claim. According to Diane Smith, a vocational expert who testified briefly, Theis has been employed as a manager, cook, and cashier at a fast food restaurant, a construction worker, and a certified nurse assistant. Smith testified that Theis' employment at the Kentucky Fried Chicken restaurant ranged from skilled, light work to semi-skilled, medium work.[2] Smith testified that Theis' construction work was semi-skilled, heavy. Also, Smith testified that Theis' employment as a nurse assistant constituted semi-skilled, medium work under the Guidelines but that "realistically that work is more at the heavy level because of the weight limits of the patients involved." Smith stated that Theis' job as a fast food cook constituted semi-skilled, medium work.

### III. THEIS' MEDICAL HISTORY

Turning to her medical history, Theis alleges that her medical records demonstrate that she suffers from significant impairments, including seizures, migraine headaches, back pain with radiation, neck pain, bilateral knee pain, bilateral leg numbness, urinary frequency, diabetes, anxiety, and depression.

Theis testified that convulsive seizures started plaguing her in 1993. According to medical records, Theis was diagnosed with a seizure disorder in 1995. Theis testified that seizures were the "main problem" keeping her from working. In May of 2006, Theis underwent a MRI exam that revealed an area of abnormality in her brain but no hemorrhage or mass. In February of 2007, Theis

---

[2] Smith explained that even though the kind of work Theis' did as a cook is classified as skilled by the Medical-Vocational Guidelines, the food was pre-prepared and "so realistically it's more at the semi-skilled level."

was hospitalized overnight after suffering her first seizure in a number of years.  Theis had not been taking her seizure medication.  She tested positive for benzodiazepines, opiates, and tricyclic antidepressants.  She was released in a stable condition.  In September of 2007, Theis was again hospitalized after suffering a seizure.  She was diagnosed with uncontrolled seizure disorder and hypoglycemia.  The treating physician, Dr. Wajih Instanbouli, noted that Theis had not taken her seizure medicine several weeks prior to the episode.  She was released in stable condition.  In January of 2009, she was treated for a possible seizure which may have been triggered by alcohol consumption.  During an office visit with Dr. Scott Laffoon, in November of 2009, Theis complained that she was still having seizures.  In December of 2009, Dr. Delphin Sallowm concluded that Theis' seizure disorder was "not well controlled."  However, a physical examination revealed no abnormalities.  Dr. Sallowm suggested that some of Theis' seizures may actually have resulted from stress.  He also found that Theis had an abnormal EEG, but a neurological examination did not detect any problems.  An MRI of Theis' brain, performed on March 2, 2010, revealed a developmental venus anomaly in her left frontal lobe but no hemorrhage or cavernous malformation.  At the hearing, Theis testified that she sometimes suffers multiple seizures in a single day.  She testified that she takes Tetgretol and Neurontin to prevent seizures.

Theis has also complained about chronic headaches since February of 2005.  In May of 2006, she was clinically evaluated by Dr. Roger Cagle for the complaint that her headaches lasted for two days.  She complained to Dr. Alexander Dunlap and Dr. Laffoon of headaches in 2007 and 2008. In May of 2009, Theis was admitted to Arkansas Methodist Medical Center where she complained of headaches that lasted for three weeks.  Later that month, she was admitted to Mission Outreach Charitable Clinic for headaches.  In June of 2009, Theis was again admitted to Arkansas Methodist

Medical Center for headaches that persisted despite medication. During that same month, Dr. Joe Stallings, noting that Theis complained of migraine headaches, concluded that she may suffer from chronic daily headaches. Throughout 2009, Theis complained of daily headaches and migraines which interfered with her ability to sleep. Dr. Laffoon noted that various oral medications were unable to successfully relieve Theis' headaches. Theis has continued to complain about and be treated for severe or migraine headaches. She testified that she currently take Propanolol to treat her headaches, and that Dr. Laffoon took her off a previous medication for headaches which had a possible link to seizures.

Theis received outpatient treatment regularly for recurrent major depression and anxiety from 1997 to 1998 and then again from 2005 to 2008, until she lost her medicaid. Her Global Assessment of Functioning (GAF) Scale[3] scores have ranged from 50-62 during the treatment periods. In February of 2007, Dr. Mary Wegner concluded that Theis was suffering from severe stress but that she did not have psychotic symptoms and denied having suicidal inclinations. Dr. Wegner also treated Theis for recurrent major depression which appeared to result, in part, from stress. In July of 2008, a certified mental health examiner, Suzanne Gibbard, Ph.D., evaluated Theis and identified several symptoms of depression and anxiety. In 2009, Theis reported multiple occasions of hallucinations. In December of 2009, Dr. Sallowm concluded that Theis has depression and anxiety. Theis testified that she takes Xanax or Alprazolam to treat her anxiety and Lexipro to treat her depression.

---

[3] *See* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000 Text Revision).

Theis alleges that she suffers from chronic neck pain, back pain, and knee pain. She has complained of numbness in her toes, and pain in her legs and feet which caused her difficulty walking. In 2006 and 2007, Theis reported pain in both knees. In September of 2006, X-rays of Theis' knees indicated mild narrowing of the medial joints. In May of 2007, a nerve conduction revealed mild abnormalities consistent with piriformis syndrome in her left lower sciatic nerve. In December of 2007, an x-ray revealed osteophytes with degenerative changes in her C-spine. Theis reported neck spasms in March of 2008. Another nerve conduction study, performed in July of 2008, showed abnormalities in both sciatic nerves, with the one on the left being slightly worse than the previous study. Again, the study results were consistent with peripheral nerve entrapment due to piriformis syndrome. Theis began to complain of daily back pain in August of 2008. Also in August of 2008, she reported feeling a pop in her back when bending over to pick something up. She suffered from spasms in her back and attended physical therapy without apparent improvement. She continued to report pain in her neck, back, and knees from late 2008 through early 2009. In February of 2009, Theis was admitted to Arkansas Methodist Medical Center for complaints that back pain radiated up to her neck. During that same month, an MRI was performed and revealed only slight degenerative changes, including slight disc bulge and ligamentous thickening in part of her lumbar spine. In February and March of 2009, Theis reported continuous back and knee pain, and she was treated with an injection in her left knee. She has continued to report back pain and knee pain. Dr. Laffoon, however, said Theis has been non-compliant with physical therapy.

Theis is a diabetic and has had past incidents of hypoglycemia and hyperglycemia. Dr. Laffoon suggested that her diabetes may have caused repeated infections. Theis has managed to control her diabetes, more or less, since February of 2009. In 2006 and 2007, Theis reported

suffering from urinary frequency. At the hearing, Theis testified that she has been treated for cancer on four occasions. Theis also complained of kidney failure, but the ALJ concluded that this was a non-medically determinable impairment. Theis testified that her physician has prescribed a variety of medications to deal with her various health issues.

### IV. THE ALJ'S DECISION AND THEIS' CLAIMS OF LEGAL ERROR

At the first step, the ALJ found that Theis had not engaged in any substantial gainful activity since the application date. The ALJ also found that Theis satisfied the second step because she suffered from multiple severe impairments: a history of seizure disorder, depression, anxiety, piriformis syndrome, mild degenerative disc disease, mild degenerative joint disease of the knees, and headaches. However, the ALJ found that Theis had not met the third step, concluding that she did not have an impairment or combination of impairments which were medically equivalent to a listing. The ALJ also concluded that Theis:

> has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except [that she] is limited to performance of unskilled work which is defined as simple work where interpersonal contact is incidental to the work performed; the complexity of one to two step tasks is learned and performed by rote, with few variables and little judgment; and the supervision required is simple.

The ALJ found Theis allegations of pain not credible to the extent they were inconsistent with these conclusions. At the fourth step, based on vocational expert testimony, the ALJ found that a number of Theis' previous positions constituted past relevant work. Nonetheless, the ALJ concluded that Theis was unable to perform any of her past relevant work. At the fifth step, however, the ALJ found—without the testimony from a vocational expert—that jobs which Theis could perform exist in significant numbers in the national economy . The ALJ stated:

> **9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).**
>
> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).
>
> If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18. However, the additional limitation of being able to perform only unskilled work have little or not effect on the occupational base of unskilled light work. A finding of "not disabled" is therefore appropriate under the framework of this rule. (SSR 85-15)

Thus, the ALJ concluded that Theis was not disabled and denied her disability claim.

Theis contends that the ALJ erred by (1) concluding that she did not meet one of the listings; (2) failing to properly weigh the medical evidence; (3) determining Theis' residual functional capacity based on an improper definition of "unskilled work" and without considering the limitations caused by her headaches, depression and anxiety; (4) failing to rely on vocational expert testimony; and (5) failing to obtain a residual functional capacity report. For the reasons discussed below, the Court concludes that the ALJ erred when he found that Theis is not disabled at the fifth step without obtaining relevant vocational expert testimony. First, however, the Court considers Theis'

contention that the ALJ did not perform the proper evaluation at the third step because he ignored relevant listings.

**A.      Allegations of Error at the Third Step**

Theis argues that the ALJ erred in concluding that she did not have an impairment or combination of impairments that meets or equals one of the listings in 20 C.F.R. 404, Subpart P, App. 1 (2011). Theis contends that the ALJ's conclusions at the third step were conclusory and argues that the ALJ should have considered whether the medical evidence of her migraine headaches equaled listing 11.02 or listing 11.03, or met the proposed listing 11.02 for migraine headaches.

Both listings 12.04 and 12.06 require, among other things, medically documented evidence of an affective disorder "[r]esulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration[.]"[4] Alternatively, these listings require a:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.[5]

---

[4] Referred to by the ALJ as "paragraph B."

[5] Referred to by the ALJ as "paragraph C."

Here, the ALJ concluded that Theis's impairments did not meet either listing 12.04 or listing 12.06 after finding that they did not satisfy either of these requirements. To the extent Theis' argument—that the ALJ's analysis at the third step was inadequate—extends to listings 12.04 and 12.06, her contention lacks merit. Indeed, Theis does not point to any medical evidence indicating that the ALJ erred in his detailed analysis of whether Theis' impairments met the requirements of listings 12.04 and 12.06.

Theis' principal complaint about the ALJ's analysis at the third step is that his opinion does not mention listings 11.02 and 11.03. Theis contends that migraine headaches, for which there is no current listing, are medically equivalent to epilepsy under listings 11.02 and 11.03. Specifically, she argues that "[b]oth disorders are characterized by 'paroxysmal, transient alterations of neurologic function, usually with a normal neurologic examination between events.' "[6] Theis also asserts that migraine headaches and epilepsy "react to environmental triggers," and "can masquerade as each other in parties whose condition seems unclear." Theis seeks to bolster her argument by pointing out that there is a proposed listing 11.20 for migraines where the claimant suffers from " 'very frequent completely prostrating and prolonged attacks occurring more frequently than 2 to 3 times a month documented by a history of episodes and by a detailed description of a typical attack, with pattern and various associated phenomena.' "[7] As noted above, the ALJ concluded that Theis did not meet any of the listings. Although it may have been better if the ALJ had addressed whether Theis' headaches were medically equivalent to the epilepsy listing 11.02 or listing 11.03, the ALJ's determination that Theis did not meet any of the listings will not be reversed simply because he did

---

[6] Theis did not provide a source for this internal quotation in her brief.

[7] Theis' brief cites to www.migraines.org/disability/disableg.htm.

not address listings 11.02 and 11.03 in detail—so long as the record supports his overall determination. *Barnhart*, 342 F.3d at 855. The medical evidence shows that Theis has complained of chronic, severe headaches since 2005, has been evaluated for migraines, and has received treatment for severe headaches on a regular basis. Based on the medical evidence, the ALJ found that her headaches constitute a "severe impairment." In light of this determination and the proposed listing for migraines, the ALJ would have done well to specifically address whether Theis' headaches were medically equal to listing 11.02 or listing 11.03. Because the Court remands this case for reconsideration pursuant to the analysis below, the Court also directs that on remand an evaluation should be conducted to determine whether Theis' headaches equal listing 11.02 or listing 11.03.

**B.     Allegations of Error at the Fifth Step**

As discussed above, Theis performed a wide range of work in the fifteen years before she applied for social security benefits. The ALJ concluded, based on vocational expert testimony, that Theis' work as a cook, fast food cook, construction worker, and CNA constituted past relevant work. Nevertheless, the ALJ concluded that Theis' impairments limited her from serving in any of these positions. Yet, applying the Medical-Vocational Guidelines at the fifth step, the ALJ found that there were other jobs that exist in significant numbers in the national economy which Theis could perform. The ALJ did not, however, explain what those jobs might be, nor did the ALJ rely upon vocational expert testimony as to what jobs existed that Theis could perform. In light of the variety of positions Theis held in the fifteen years before the alleged onset of her disability and the ALJ's conclusion that Theis is not able to perform any of her past relevant work, the ALJ's conclusory finding that jobs exist in significant numbers in the national economy that Theis could perform cannot be upheld.

Theis contends that the ALJ's basis for finding her not disabled—that she could perform other jobs existing in significant numbers in the national economy, namely, unskilled light work—cannot stand because the ALJ did not elicit any testimony from a vocational expert.[8] "Generally, if the claimant suffers from nonexertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the ALJ is required to utilize testimony of a vocational expert." *Draper v. Barnhart*, 425 F.3d 1127, 1132 (8th Cir. 2005) (citing *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993)); *see also Lucy v. Chater*, 113 F.3d 905, 908-909 (8th Cir. 1997); *Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001). There is an exception to this rule where "the ALJ finds, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish the claimant's RFC [residual functional capacity] to perform the full range of activities listed in the guidelines." *Draper*, 425 F.3d at 1132 (alteration in original) (citing *Reed*, 988 F.2d at 816).

"Nonexertional limitations are limitations other than on strength but which nonetheless reduce an individual's ability to work." *Asher v. Bowen*, 837 F.2d 825, 827 n.2 (8th Cir. 1988). The ALJ concluded that Theis "has the following severe impairments: history of seizure disorder, depression, anxiety, piriformis syndrome, mild degenerative disc disease, mild degenerative joint disease of the knees, and headaches[.]" Seizure disorder, depression, anxiety, headaches, and pain

---

[8] While a vocational expert was called and testified, the ALJ's fifth step analysis makes no mention of the vocational expert or her testimony. The vocational expert's only testimony was that she was familiar with Theis' work history along with a brief account of that work history and the DOT levels comparable to that past work. The ALJ elicited no testimony from the vocational expert about whether jobs exist in significant numbers in the national economy that Theis could perform. The ALJ did not address any hypothetical questions to the vocational expert. The Commissioner does not contend that the ALJ relied on a vocational expert at the fifth step.

are nonexertional impairments. *Tegeler v. Astrue*, 390 Fed. App'x 610 (8th Cir. 2010) (seizure disorder); *Hollins v. Astrue*, No. 4:08CV462, 2009 WL 2596481, *11-12 (E.D. Mo. July 29, 2009) (seizure disorder); *Case v. Barnhart*, 165 Fed. App'x 492 (8th Cir. 2006) (depression); *Van Winkle v. Barnhart*, 55 Fed. App'x 784 (8th Cir. 2003) (anxiety and depression) (citing 28 C.F.R. §§ 404.1569a(c), 416.969a(c) (2002)); *Johnson v. Secretary*, 872 F.2d 810, 814 (8th Cir. 1989) (headaches); *see also Gray v. Apfel*, 192 F.3d 799, 802 (8th Cir. 1999) (giving "pain or mental incapacity" as examples of nonexertional impairments). By definition, "severe impairments" are those which "which significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c); *Webber v. Sec'y, Health & Human Servs.*, 784 F.2d 293, 299 (8th Cir. 1986) ("We fail to comprehend how the Appeals Council could possibly have determined that [the claimant's nonexertional impairment] constitutes a 'severe' impairment and yet concluded that this nonexertional impairment does not significantly affect her exertional abilities."); *see also King v. Astrue*, 564 F.3d 978, 979 (8th Cir. 2009).

As noted, Theis' seizure disorder, depression, anxiety, and headaches are nonexertional impairments and, because the ALJ found that these impairments were severe, by definition they significantly limit Theis' ability to do basic work activities. Consequently, the ALJ's decision to rely solely on the Medical-Vocational Guidelines without eliciting relevant testimony from the vocational expert was error. The ALJ invaded the province of the vocational expert. *Sanders v. Sullivan*, 983 F.2d 822, 823-24 (8th Cir. 1992).

The ALJ erred to the extent that he found that Theis' seizure disorder, depression, anxiety, and headaches are severe impairments but concluded at the fifth step, without testimony from a vocation expert, that Theis is not disabled. The Court will remand this action so as to give the Social

Security Administration an opportunity to re-evaluate the medical evidence; to ensure that Theis' residual functional capacity is based on the proper definition of "unskilled work"; to consider any limitations caused by Theis' headaches, depression, and anxiety; to obtain a residual functional capacity report, if necessary; and to obtain testimony from a vocational expert at the fifth step of the sequential analysis.

## CONCLUSION

For the foregoing reasons, the Commissioner is reversed and this action is remanded for proceedings consistent with this opinion. This is a sentence four remand. *See Travis v. Astrue*, 477 F.3d 1037, 1039 (8th Cir. 2007).

IT IS SO ORDERED this 1st day of July, 2011.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE